**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ISRAEL COLLAZO-MERCADO,

    Plaintiff,

        v.                          CIVIL NO. 12-1298 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

Israel Collazo ("plaintiff" or "claimant") was born in 1969, has completed high school, and was employed as a bakery worker at a local cafeteria until January of 2007.  (Tr. 317, 431).  On June 25, 2008, plaintiff filed an application for Social Security disability benefits, alleging disability due to major depressive disorder.  (Tr. 27, 316).  The alleged onset date of the disability was January 1, 2007, while the end of the insurance period was December 31, 2010.  (Tr. 321, 323).  Plaintiff's application was denied initially on October 30, 2008, and upon reconsideration on January 15, 2009.  (Tr. 27).  Plaintiff made a timely request for a hearing on February 18, 2009.  Id.  On March 11, 2010, a hearing took place before an Administrative Law Judge ("ALJ").  Id.  Plaintiff waived his right to appear at the hearing, but was represented by counsel.  Id.  On March 31, 2010, the ALJ rendered a decision denying plaintiff's claim.  (Tr. 35).  The Appeals Council denied plaintiff's request for review on May 20, 2010; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant").  (Tr. 1, 5).

On May 12, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) together with 5 U.S.C. §706, alleging that it was not based on

substantial evidence.  (D.E. 1, ¶¶ 2, 6).  On October 10, 2012, defendant filed an answer to the complaint and a certified transcript of the administrative record.  (D.E. 11).  Both parties have filed supporting memoranda.  (D.E. 16; 17).

## I.   LEGAL STANDARD

### A.   Standard of Review

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence.  Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence."  Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B.      Disability Under the Social Security Act**

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987).  An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process.  20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42.  If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.  At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are

denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).  Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform."  Id.

---

[1] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

II.     THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

Plaintiff was treated at the Western Behavioral Health Center (Centro de Salud Conductual del Oeste) ("CSCO") from November 29, 2001, through May 29, 2008.  (Tr. 147, 396).  According to CSCO progress notes, from the onset date of January 1, 2007, through May 29, 2008, plaintiff suffered from hallucinations, anxiety, depression, tension, restlessness and mood swings.  He was diagnosed with polysubstance abuse (excluding opioids), schizophrenia of the catatonic type, schizoaffective disorder, and unspecified affective psychoses (Mood Disorder NOS). (Tr. 104-05; 100-02; 96-991, 147-151, 154-55; 152-153).

Plaintiff received inpatient mental treatment from August 12 to 28, 2008, at Dr. Tito Mattei Metropolitan Hospital ("Metropolitan Hospital") due to hallucinations and suicidal thoughts.   (Tr. 402-30).   On the date of admittance, Dr. Maritza Ortiz ("Dr. Ortiz"), a psychiatrist, conducted a psychiatric evaluation of plaintiff.  (Tr. 156-61).  He was diagnosed with undifferentiated schizophrenia.  (Tr. 207-08).  At the time of discharge, plaintiff was not suffering from suicidal thoughts or hallucinations; his demeanor was described as calm, friendly, and cooperative.  (Tr. 427-28).  Plaintiff's condition was listed as "improved" upon discharge. (Tr. 207-08, 430).  Dr. Ortiz assigned plaintiff a follow-up appointment on August 27, 2008, at the Administración de Servicios de Salud Mental y Contra la Adicción ("ASSMCA") Mental Health Clinic in Mayagüez.  (Tr. 205-08).

Plaintiff underwent a consultative psychiatric evaluation by Dr. Armando Caro ("Dr. Caro"), a psychiatrist, on September 10, 2008.  Plaintiff reported having suffered chronic back pain, depressed mood, social isolation, anxiety, poor sleep, hearing voices call him, seeing things that were not there (shadows), irritability, poor concentration, memory problems, poor self-esteem and feeling worthless.  (Tr. 209).  He claimed that the feeling of depression coincided with the worsening of his back pain condition.  Id.  The record indicates that plaintiff

had been previously diagnosed with lumbar discongenic disease and chronic headaches.  Id.
Dr. Caro performed a Folstein Mini-Mental State Exam on plaintiff to determine the severity of
cognitive disability.  (Tr. 211-12).  The exam determined that plaintiff did not suffer from
significant cognitive disability.[2]  Dr. Caro's observations noted the following regarding plaintiff:
he had a startled gaze; moderate psychomotor retardation; mood was anxious; he denied auditory
and visual hallucinations; no delusions were elicited; judgment and insight was poor; his speech
was fluent, coherent, and logical; he was oriented in time, place and person; concentration and
recent memory were fair. (Tr. 210).  Id.  Dr. Caro gave plaintiff a Global Assessment of
Functioning ("GAF") of 55, which indicated moderate symptoms.[3]  (Tr. 210).  Dr. Caro's
diagnostic impression established that plaintiff suffered from schizoaffective disorder, depressed
type, as well as disc lumbar intervertebral disc disorder and chronic cephalalgia.  He assessed
that plaintiff lacked any capacity to handle funds and had impaired capacity for social
interaction.  Id.  Dr. Caro based this second assessment on his personal interaction with plaintiff.
Id.  He concluded that plaintiff's prognosis was poor.  Id.

On September 24, 2008, Lillian González, Ph.D. ("Dr. González"), a state-agency
psychologist, considered the available medical evidence and other evidence on the record and
assessed that plaintiff's affective disorder was depressive disorder with anxious features and did

---

[2] Plaintiff obtained a total score of 25/30 in the Mini Mental State Exam.  Suggested guidelines to determine
cognitive disability indicate the following: Mild, MMSE 21-24; Moderate, MMSE 10-20, Severe, MMSE <9.  (Tr.
211-12).

[3] According to the fourth edition of the Diagnostic and Statistical Manual for Mental Disorders, the GAF "is a
subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of
functioning.'"  American Psychiatric Association, Diagnostic Manual of Mental Disorders 32 (4th ed., text revision
2000) (1994) (hereinafter DSM-IV-TR), quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).
It "'considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-
illness.'"  Echandy-Caraballo v. Astrue, 2008 WL 910059, at *4 n.7 (D.R.I. Mar. 31, 2008) (quoting DSM-IV-TR,
at 34 (internal alterations omitted)).  A GAF score of 51 to 60 indicates "'moderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-workers).'"  Id. (quoting DSM-IV-TR, at 34).

not constitute a severe impairment.[4]   (Tr. 437, 440).   Her consultative review reported that plaintiff had a "mild" degree of limitation in: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace.   (Tr. 447).   Dr. González reported "none" as the degree of limitation due to episodes of decompensation, each of extended duration.   Id.

On October 29, 2008, Orlando Reboredo, Ph.D. ("Dr. Reboredo"), a state-agency psychologist, considered the available medical and other evidence on the record and assessed that plaintiff's affective disorder was recurrent major depression of moderate intensity which constituted a "more than not severe impairment."   (Tr. 451-70).   His consultative review reported that plaintiff had a "mild" degree of limitation in restrictions of activities of daily living and "moderate" degree of limitation in difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, and pace.   (Tr. 463).   Dr. Reboredo reported "one or two [episodes]" as the degree of limitation due to episodes of decompensation, each of extended duration.   Id.   Dr. Reboredo utilized a RFC Assessment to draw his determination of plaintiff's "more than not severe impairment."   (Tr. 467-70).   Dr. Reboredo's RFC Assessment indicated that plaintiff was "moderately limited" in the ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychological based symptoms; perform at a

---

[4] Conclusions as to whether a claimant is "disabled" and related legal conclusions are administrative decisions that are to be made by the Commissioner, not by medical personnel.  20 C.F.R. § 404.1527(e); see Rivera v. Comm'r of Soc. Sec., Civ. No. 08-2281 (JAF), 2010 WL 132329, at *5 (D.P.R. Jan. 8, 2010) ("[W]hile [his physician] believed that [c]laimant was disabled and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion.") (citing Frank v. Banhart, 326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted)).

consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public.  (Tr. 467-68).  Dr. Reboredo concluded that plaintiff's mental impairments did not meet or equal the requisites established in section 12.04 of 20 C.F.R. Part 404.  (Tr. 453-69).  In Section III of the RFC Assessment, Dr. Reboredo stated:

> The overall [medical record] suggests that claimants' condition appears stable with [psychological treatment.]  Considering the findings reported by the [medical record], the intensity appears to be within the moderate level, simple-tasks capable.  The symptoms are credible given the claimant's depression.  *The intensity of the limitations attributed to the mental disorder are not consistent with the overall findings in the [medical record.]*  The claimant is able to learn, understand, remember and perform at least simple activities.  He seems able to sustain pace and attention, and persist at simple work activities during a regular workday and workweek, without special help, supervision or considerations.  He is able to interact with public, coworkers and supervisors, and adjust to changes in work routines and environments.  (Tr. 469) (emphasis added).

On January 13, 2009, Hugo Román, Ph.D. ("Dr. Román"), another state-agency psychologist, conducted a consultative evaluation and affirmed Dr. Reboredo's assessment based exclusively on medical and other evidence on the record.  (Tr. 475).

On March 2, 2010, nine days before plaintiff's hearing before the ALJ, Dr. Ortiz, performed a psychiatric evaluation of plaintiff in the ASSMCA offices.  (Tr. 480).  The psychiatric evaluation included a mental exam and mental residual functional capacity assessment ("mental RFC assessment").  (Tr. 480-89).  The mental exam described plaintiff as cooperative, coherent, relevant, logical and possessing an adequate appearance for his age, although it noted the presence of: perceptual disorders, periodic delirium, depressed mood, irritability, problems with sleep, diminished concentration, labile affect, and "words salad."  (Tr. 216-24).  Dr. Ortiz diagnosed plaintiff with schizophrenia of the undifferentiated type and assigned him a GAF of less than 50.[5]  (Tr. 224).

---

[5] A GAF between 41 and 50 "indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends,

Dr. Ortiz's mental RFC assessment stated that plaintiff was "seriously limited, but not precluded," or worse in all areas of the assessment form and "unable to meet competitive standards" in an axiomatic majority of areas.  (Tr. 226-27).  In terms of functional limitation, Dr. Ortiz noted plaintiff's "marked" restriction of activities of daily living and difficulties maintaining social functioning; "moderate" deficiencies in concentration, persistence or pace; and three repeated episodes of decompensation within a twelve-month period, each lasting at least two weeks.  (Tr. 227).  The report indicates that plaintiff has a "medically documented history of organic mental, schizophrenic, etc. or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity …."  (Tr. 228).  The mental RFC assessment also states that plaintiff's symptoms would lead to more than four work absences per month and render him unable to "manage benefits in his … own best interest."  (Tr. 228-29).

## III.   ANALYSIS

Plaintiff argues that the ALJ's step five analysis was not based on substantial evidence because it did not give controlling weight to the opinion of Dr. Ortiz thus affecting the RFC determination and the hypothetical posed to the vocational expert ("VE"). Typically, the Commissioner meets his burden at step five, as in the instant case, by relying on the testimony of a vocational expert.  Ramos v. Sec'y of Health & Human Services, 514 F. Supp. 57, 64 (D.P.R. 1981).  Plaintiff alleges that the ALJ erred by not taking into consideration Dr. Ortiz's opinion and not presenting to the VE the hypothetical situation of an individual who is markedly limited in his "ability to accept criticism and supervision[,] … maintain normal work hours[,] … fulfill strict standards of punctuality and their capacity to work with other without being distracted or

---

unable to keep a job),'" id. (quoting DSM–IV, at 34). A GAF between 51 and 60 "indicates the individual has '[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning,'" Pate-Fires v. Astrue, 564 F.3d 935, 938 (8th Cir. 2009) (quoting DSM–IV, at 32).

cause a distraction ….”  (Tr. 45).  In a Social Security disability benefits case, an ALJ should generally give more weight to a treating physician’s opinions, because such doctors “are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant’s] medical impairment(s).”  20 C.F.R. § 404.1527(d)(2).  The main inquiry in the instant case is whether the ALJ was correct in his determination that Dr. Ortiz did not act as plaintiff’s treating physician.  For the reasons set forth below, the ALJ did not err in concluding that Dr. Ortiz, despite attending to plaintiff during his hospitalization in 2008 and examining him in 2010, does not qualify as a treating source entitled to commanding weight.

As discussed above, Dr. Ortiz diagnosed plaintiff with undifferentiated schizophrenia and determined that his mental RFC, among other things, caused “more than a minimal limitation of ability to do any basic work activity.”  (Tr. 224, 226-29).  The ALJ gave the following reasons to deny weight to Dr. Ortiz’s medical opinion: (1) her “severity assessment is not supported by [her] own findings, which [s]he failed to provide, nor by those on the whole records”; (2) “the reports from the Behavioral Health Center do not reflect that [she] was an actual treating psychiatrist”; (3) she “did not offer any progress notes of her psychiatric treatment to support her diagnostic impression and residual functional capacity assessment, depriving [the ALJ and the Social Security Administration] from analyzing the pattern of said treatment and its effect on the claimant’s daily living and capacity to perform work-related activities from the mental standpoint.”  (Tr. 31).  Defendant argues that Dr. Ortiz “did not support [her] assessment with medical findings” and that these findings were inconsistent with other substantial evidence on the record.   (D.E. 17, at 15).  Defendant also alludes to the fact that the ALJ’s findings were supported by the two consultative state agency psychologists, Dr. Reboredo and Dr. Román.  Id. As an initial matter, “the testimony of a non-examining medical advisor … can alone constitute

substantial evidence, depending on the circumstances." <u>Berríos López v. Sec'y of Health &</u> <u>Human Services</u>, 951 F.2d 427, 431 (1st Cir. 1991).   Such evidence, however, "must be 'substantial,' and, under the regulations, the weight given to a nonexamining opinion will depend on the degree to which it provides supporting explanations." <u>Ormon v. Astrue</u>, No. 11-2107, 2012 WL 3871560, at *3 (1st Cir. Sept. 7, 2012) (internal quotation omitted).   Moreover, the severity of Dr. Ortiz's RFC assessment contradicts the medical opinion provided by all other physicians on the record, not just Dr. Reboredo's and Dr. Román's.   Dr. Caro's report claimed that plaintiff did not suffer from significant cognitive disability and only displayed moderate symptoms of mental disorder.   (Tr. 210-212).   Dr. González's report noted only mild limitations as a result of plaintiff's mental condition.   (Tr. 447).   Hence, even if Dr. Ortiz was to be considered a treating physician, the ALJ could disregard her opinion since it was "unsupported by the record." <u>Carrasco v. Comm'r of Soc. Sec.</u>, 528 F. Supp. 2d 17, 25 (D.P.R. 2007).   "In reviewing the record for substantial evidence, a court must keep in mind that '[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.   Furthermore, the court must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support the Commissioner's conclusion." <u>Valiquette v. Astrue</u>, 498 F. Supp. 2d 424, 430-31 (D. Mass. 2007) (quoting <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981); <u>Monroe v. Barnhart</u>, 471 F. Supp. 2d 203, 210 (D. Mass. 2007)).

In general, more weight is given to the opinions of treating physicians since these sources are likely to be the medical professionals "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). "[T]he medical opinion of a treating physician is given extra weight because of his unique position resulting from the 'continuity of treatment he provides and the doctor/patient relationship he develops.'" Petrie v Astrue, 412 F. App'x 401, 405 (2nd Cir. 2011) (internal citations omitted). Dr. Ortiz, however, saw plaintiff on only two occasions: late August 2008, during plaintiff's hospitalization; and March 2, 2010, during an examination a mere nine days before plaintiff's hearing before the ALJ. (Tr. 156-61, 216).[6] An eighteen-month gap exists between Dr. Ortiz's examinations. In another case analyzing what constitutes a treating physician, the ALJ had rejected giving a physician commanding weight because, among other things, his opinion "was based on only two contacts with [plaintiff]" and was "inconsistent with the overall objective medical evidence." Daniels v. Astrue, Civ. No. 12-30056-RGS, 2013 WL 1385396, at *6 (D. Mass. Apr. 2, 2013) (affirming the ALJ's decision). Moreover, after his discharge from his hospitalization in 2008, plaintiff did not see Dr. Ortiz until March 2, 2010, following two denials of Social Security disability benefits; it is "by no means obvious" that a physician should be considered a treating source if the claimant did not consult him "until after the initial determination of no disability" and only on limited occasions. Vazquez v. Sec'y of Health & Human Servs., 45 F.3d 424 (1st Cir. 1995); see 20 C.F.R. § 404.1502 (1991) (defining treating source as a physician with whom claimant has had an "ongoing" relationship based on the need for treatment and not solely on the need to obtain a favorable report).

Although providing mental treatment during a sixteen-day hospitalization certainly makes Dr. Ortiz an examining physician, it does not necessarily establish the existence of an "ongoing treatment relationship," 20 C.F.R. § 404.1502, provide a longitudinal picture of

---

[6] Although not present in the official translations, Dr. Ortiz's signature stamp appears in numerous progress notes taken during plaintiff's hospitalization at Dr. Tito Mattei Hospital. (See, e.g., Tr. 167, 169, 173, 177, 179, 181, 183, 191, 199, 201, 203, 205.)

plaintiff's medical picture, or lead to the establishment of a comprehensive "doctor/patient relationship." Petrie, 412 F. App'x at 405. An "ongoing treatment relationship" requires plaintiff to visit the medical source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [his] medical condition(s)." 20 C.F.R. § 404.1502. There is substantial evidence to support the conclusion that a serious mental illness such as schizophrenia, which detrimentally affected and limited an individual as much as Dr. Ortiz's RFC indicates that plaintiff is limited, requires "treatment and/or evaluation[s]," 20 C.F.R. § 404.1502, in a more frequent manner than once every eighteen months. Hence, plaintiff's examination on March 3, 2010, nine days before the hearing before the ALJ, is more properly considered a consultative examination; it was not preceded or followed up by "ongoing treatment." Id. Plaintiff claims that Dr. Ortiz treated him for the first time in 2004 but, aside from a document stating that he began treatment in 2004 at ASSMCA (Tr. 216), presents no evidence of this 2004 visit or any other contact with Dr. Ortiz other than the 2008 hospitalization and 2010 consultative examination. (D.E. 16, at 7).[7] "Under the regulations, the less a medical source presents relevant evidence to support an opinion, the less weight it is entitled." Green v. Astrue, Civ. No. 11-11711-PBS, 2013 WL 636962, at *7 (D. Mass. Feb. 20, 2013) (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)).

**IV.   CONCLUSION**

Based on the foregoing analysis, the Court concludes that the Commissioner's decision was based on substantial evidence. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[7] Various Behavioral Health Center progress notes dating to 2005 contain a signature that could be interpreted as belonging to Dr. Ortiz. These same documents, however, lack an official "signature stamp" and were not alluded to by either plaintiff or defendant. Hence, they are inconclusive at best. (See Tr. 380-82.)

13

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of September, 2013.

s/Marcos E. López
U.S. Magistrate Judge